UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALI ABU SALIM, A-070-085-253,

Petitioner,

v.

WARDEN,

Respondent.

No.  1:26-cv-1121 DAD AC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding through appointed counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.      Factual and Procedural Background

Petitioner was born in Gaza, State of Palestine, and came to the United States in 1992 on a B2 visitor visa.  ECF No. 1 at 2; ECF No. 11 at 1; ECF No. 12 at 5.  Respondents state that petitioner is a resident of Israel, which is where the Department of Homeland Security (DHS) intends to remove him.  ECF No. 11 at 1.  Petitioner was ordered removed on February 1, 2006, and at some point thereafter he was released from DHS custody on an order of supervision.[1]  ECF

[1]  Petitioner states that he was likely detained for approximately two months after he was ordered removed, but that he does not currently have documentation of that detention.  ECF No. 12 at 11. Respondents do not offer any information regarding when petitioner was released on supervision but concede that he "has been in custody longer than six months if his prior term of detention is counted."  ECF No. 11 at 3.

1

No. 11 at 1; ECF No. 12 at 5. Petitioner's record shows that after his release he was convicted of numerous crimes over the years, with the most recent conviction occurring on August 8, 2019, and resulting in a two-year sentence. ECF No. 11-1 at 3-4. On November 25, 2024, petitioner was arrested by the Fresno Police Department for taking a vehicle without consent and was released to DHS custody on November 24, 2025 (id. at 2), which he states was at the end of a carceral sentence (ECF No. 12 at 5). Petitioner alleges that he was not provided notice of the reasons for the revocation of his release or an opportunity to respond to the reasons for the revocation. ECF No. 1 at 17-18; ECF No. 12 at 20.

On February 3, 2026, petitioner filed a pro se petition for writ of habeas corpus under § 2241 and was later appointed counsel. ECF Nos. 1, 6. Respondents have filed an opposition to the petition (ECF No. 11) and petitioner, through counsel, has filed a reply (ECF No. 12).

II.    Petition

The petition asserts four grounds for relief. First, petitioner alleges that his continued detention violates due process because his post-final removal order detention has extended beyond the presumptively reasonable six-month period and there is no significant likelihood that he will be removed in the reasonably foreseeable future. ECF No. 1 at 13-14. Next, he asserts that ICE's current procedures relating to the removal of persons to third countries, which provide little to no notice or process, violates due process, 8 U.S.C. § 1231, implementing regulations, the Convention Against Torture (CAT), and the Administrative Procedures Act (APA). Id. at 14-15. Ground Three alleges that the third-country removal program is punitive and violates the Eighth Amendment and due process. Id. at 15-16. Finally, the petition asserts that petitioner's re-detention without notice or a demonstration of changed circumstances regarding the likelihood of removal violates due process, 8 C.F.R. § 241.13, and the APA. Id. at 17-18.

In opposition, respondents argue that "Petitioner has not met his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 16 at 2-3. They further argue that petitioner's re-detention is lawful because § 1231(a)(6) expressly allows the government to hold a noncitizen like petitioner who is removable under 8 U.S.C. § 1227 for more than ninety days and that supervised release can be

2

revoked for a violation or the conditions of release or for removal.  Id. at 3-4.  They appear to argue that petitioner's release was revoked due to changed circumstances leading to a significant likelihood that removal will occur in the reasonably foreseeable future, though they also appear to assert that petitioner's release was revoked due to a violation of his terms of supervision.  Id. Finally, respondents argue that petitioner's third-country removal claims should be denied because they are merely speculative.  Id. at 5.

III.    Discussion

A.  Post-Removal Order Detention

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." Id., § 1231(a)(1)(A).

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6); Johnson v. Arteaga-Martinez, 596 U.S. 573, 578-79 (2022) (after removal period expires, "the Government 'may' detain only four categories of people" as set forth in § 1231(a)(6)).  When a noncitizen is released subject to terms of supervision, release can be revoked only when the noncitizen violates a condition of release or when "on account of changed circumstances" it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(1)-(2).  The parties do not dispute that petitioner is detained under § 1231(a)(6), although neither party specifies the underlying basis for petitioner's inclusion in the categories of people to whom the statute applies.[2]

---

[2] Respondents state that petitioner is both inadmissible and removable on specified grounds, but do not provide the basis for his order of removal.  ECF No. 11 at 2.  Petitioner's I-213 indicates that he overstayed his visa and was ordered removed (ECF No. 11-1 at 2-3), while his reply states that he was ordered removed after an unspecified criminal conviction (ECF No. 12 at 5), which his I-213 reflects may have been for possession of a controlled substance (ECF No. 11-1 at 3).

3

In Zadvydas v. Davis, the Supreme Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. 678, 689 (2001).  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699.  "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention."  Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.

Petitioner asserts that his post-removal order detention violates due process both because it has extended beyond the presumptively reasonable period for post-removal order detention and his re-detention did not follow the procedures set out in 8 C.F.R. § 241.13.  ECF No. 1 at 13-14, 17-18.  Respondents concede that petitioner's cumulative detention exceeds six months, but argue that his claim that he will not be removed because "Palestine is not a country anymore" is not sufficient to show "there is no significant likelihood of removal in the reasonably foreseeable future" when DHS seeks to remove him to Israel.  ECF No. 11 at 3.

Respondents do not dispute that petitioner has been detained in excess of six months since his order of removal became final,[3] and petitioner's detention is therefore not presumptively reasonable.  "After this 6-month period, once the alien provides good reason to believe that there

---

[3]  Respondents admit that petitioner has been detained more than six months when his prior detention is considered, which the undersigned finds to be appropriate because post-final removal order detention is cumulative.  See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting argument that detention clock restarts with each re-detention and finding detention not presumptively reasonable based on aggregate period of confinement); Jaranow v. Bondi, No. 2:25-cv-2396 TL, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) (courts in Ninth Circuit have found "six-month period of detention need not be consecutive to reach the limit established in Zadvydas" (collecting cases)); Shaltapur v. Cantu, No. 25-cv-3995 PHX DWL CDB, 2025 WL 3724470, at *4 n.4 (D. Ariz. Dec. 18, 2025) (district courts within Ninth Circuit aggregate periods of detention) (collecting cases); Asfestani v. Current or Acting Field office Director, No. 1:25-cv-1562 SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025).  Moreover, petitioner's current detention has nearly reached six months.

is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701.  Although respondents dispute petitioner's claim that he will not be removed because Palestine is no longer a country, there nothing in the record to suggest any likelihood that petitioner will be deported to Israel in the reasonably foreseeable future.  Instead, the record indicates that for twenty years respondents have been unable to affect such a deportation, and although they allege "changed circumstances" there is no hint of what those changed circumstances might be.  Petitioner asserts in his reply that "ICE tried to remove him in 2006 and failed" and that they have still been unable to obtain travel documents despite the length of his compliance with removal efforts and the length of his current detention.  ECF No. 12 at 13.  If anything, as petitioner points out, current conditions in Israel and Palestine make the likelihood of removal even more remote.  Id. at 14. On this record, petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and respondents have not produced any evidence that would rebut that showing.

In failing to rebut petitioner's showing, respondents have also failed to demonstrate that there has been a change in circumstances that would permit a determination that there is a significant likelihood that the petitioner may be removed in the reasonably foreseeable future.  To the extent they argue in passing that petitioner has violated conditions of his release, they fail to identify the conditions of his release or what conditions he violated.[4]  Nor do respondents contest petitioner's assertion that they failed to adhere to the revocation procedures set forth in the regulations.  See 8 C.F. R. § 241.13(i)(3) (requiring notice of the reasons for revocation, an informal interview in order to respond to the reasons, an opportunity to present evidence or information to rebut the reasons, and a review of any contested facts); see also ECF No. 11-1 at 2 (petitioner's I-213 indicating only that he was given an "Assumption of Custody" and notified he

[4]  Even if the court assumed that petitioner had violated a condition of release, respondents would still be required to adhere to the procedures for revoking release, which it does not appear they have done.  Moreover, the regulations limit detention for violation of a condition of release to a period of six months, which in this case would be until May 25, 2026.  See 8 C.F.R. § 241.13(i)(1) (when a non-citizen subject to final order of removal violates any conditions of release he "may be continued in detention *for an additional six months*").

5

could speak to his consulate).  Respondents have therefore failed to comply with their own regulations regarding the revocation of post-final removal order release, rendering petitioner's continued detention unlawful.  See 8 C.F.R. § 241.13(i) (outlining grounds and procedures for revocation of release); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations." (citation omitted)).  "Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered."  Truong v. Noem, No. 25-cv-2597 JES MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases); Morales Sanchez v. Bondi, 811 F. Supp. 1166, 1174-76 (C.D. Cal. 2025) (ICE's failure to follow regulations demonstrated detention was likely unlawful and entitled petitioner to release); Khachikian v. Casey, No. 25-cv-3737 GPC JLB, 2026 WL 63633, at *8 (S.D. Cal. Jan. 8, 2026) (ICE's violation of 8 C.F.R. § 241.13(i)(2) and (3) entitled petitioner to habeas relief).  Similar to the many other courts to have considered the issue, the undersigned finds that respondents' failure to comply with § 241.13(i) renders petitioner's re-detention unlawful.

B.  Third-Country Removal

"When an alien is found ineligible to remain in the United States, the process for selecting the country to which he will be removed is prescribed by 8 U.S.C. § 1231(b)(2)."  Jama v. ICE, 543 U.S. 335, 337 (2005).

> The statute . . . provides four consecutive removal commands: (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection (clauses (i) to (vi) of subparagraph (E)); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "another country whose government will accept the alien into that country" (clause (vii) of subparagraph (E)).

Id. at 341.  Third-country removals represent the fourth command, and involve deportation to countries that are not identified in a final removal order and to which the non-citizen has no connection.  See 8 U.S.C. § 1231(b)(2)(E)(vii).

Petitioner contends that ICE's current procedures relating to the removal of persons to

6

third countries violates due process, 8 U.S.C. § 1231, implementing regulations, the CAT, and the APA, and that the program is punitive in violation of the Eighth Amendment and due process. ECF No. 1 at 14-16.  The petition alleges that ICE's current third-country removal procedures provide "that ICE may deport [a] person without any procedures for notice or an opportunity to be heard if the State Department confirms that it has received diplomatic assurances that individuals will not be persecuted or tortured." Id. at 3 (citing Y.T.D. v. Andrews, No. 1:25-cv-1100 JLT SKO, 2025 WL 2675760, at *9 (E.D. Cal. Sept. 18, 2025)).  Where no diplomatic assurances are received, officers are instructed to generally wait at least twenty-four hours after serving a notice of removal before effectuating removal but that in exigent circumstances a removal order can be effectuated in as little as six hours after notice if the individual "is provided reasonable means and opportunity to speak with an attorney prior to removal." Id. (citing Y.T.D., 2025 WL 2675760, at *9-10.  Officers are instructed "*not* to ask whether the individual is afraid of removal to that country" and removal is allowed to proceed so long as "the noncitizen '*does not* affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours.'" Id. (citing Y.T.D., 2025 WL 2675760, at *10).

Respondents do not challenge petitioner's representations of ICE's current third-country removal procedures in their response, and do not otherwise address these issues other than to argue they are speculative because petitioner has not shown that DHS is attempting to remove him to a third country.  ECF No. 11 at 5.  Respondents also do not challenge petitioner's allegations that their third-country removal policy is punitive in nature and has resulted in noncitizens being removed to countries to which they have no ties and where they have been imprisoned, and that in at least one case a noncitizen was sent to another country where he would likely be tortured.  See ECF No. 1 at 4-6.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)).  "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS

regulations and the constitutional right to due process." Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999) (citation omitted) (addition of alternate country for removal at end of asylum hearing after close of evidence violated due process); Sadychov v. Holder, 565 F. App'x 648, 651 (9th Cir. 2014) (if designated country of removal is changed, "the agency must provide [noncitizen] with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal" from newly designated country (citation omitted)); Najjar v. Lynch, 630 F. App'x 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

Joining numerous other courts, the undersigned finds that ICE's policy for third-country removals—which provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim—is incompatible with Ninth Circuit law and violates due process. See Vishal v. Chestnut, __ F. Supp. 3d __, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025) (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); Giebashvili v. Noem, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (same) (collecting cases); Nguyen, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy." (citing Andriasian, 180 F.3d at 1041; Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); Gomez v. Mattos, __ F. Supp. 3d __, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025) ("Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country."). The undersigned further finds that "the risk of removal without due process itself constitutes a concrete injury," Daneshfar v. Facility Adm'r, No. C25-1708 DGE MLP, 2025 WL 4037745, at *3 (W.D. Wash. Dec. 16, 2025); Esmail v. Noem, No. 2:25-cv-8325 WLH RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025), and that actual removal without notice or meaningful process is an injury that cannot be remedied once removal occurs, see Louangmilith v. Noem, __ F. Supp. 3d __, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025) (once a noncitizen is removed without notice or opportunity to be heard "it will be too late

for the individuals to meaningfully challenge the removal").  Petitioner is therefore entitled to relief on this ground, and respondents will be enjoined from removing him to a third country without first providing adequate notice and an opportunity to raise a fear of removal.[5]

To the extent petitioner asserts that the third-county removal policy is punitive because the government is deliberately removing individuals to countries where they will be imprisoned and government officials have made statements indicating third-country removals are intended as punishment (ECF No. 1 at 4-6, 15-16), respondents have not addressed these claims at all (ECF No. 1), and Federal Rule of Civil Procedure 8 deems such silence an admission.  See Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

In arguing that the government's policy is punitive and therefore unconstitutional, petitioner relies on Wong Wing v. United States, 163 U.S. 228 (1896).  ECF No. 1 at 12-13, 15. In Wong Wing, the United States Supreme Court "held unconstitutional a statute that imposed a year of hard labor upon aliens subject to a final deportation order."  Zadvydas, 533 U.S. at 694.

> The Court held that while "it is within the constitutional power of congress" to deport those unlawfully present in the United States, Congress could not add to the sanction of expulsion the "punishment by imprisonment at hard labor . . . without a trial by jury."  [Wong Wing, 163 U.S.] at 235, 16 S. Ct. 977.  The Court explained that there is a fundamental difference between "detention or temporary confinement" while awaiting deportation and "imprisonment at hard labor."  Id. at 236, 16 S. Ct. 977.  The latter, the Court concluded, was an "infamous punishment" that could only be imposed following a criminal trial with the full protection of the Fifth and Sixth Amendments.  Id. at 237-38, 16 S. Ct. 977.

Nguyen, 796 F. Supp. 3d at 733.  The Court concluded "that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law."  Wong Wing, 163 U.S. at 238.

---

[5]  To be clear, the undersigned is not recommending that the government be enjoined from removing petitioner to a third country, only that it be enjoined from doing so without providing the requisite procedural protections.

Based on petitioner's uncontested allegations, the undersigned finds that, to the extent it deliberately seeks to remove noncitizens to countries where they will be imprisoned upon arrival, the government's third-country removal policy is punitive and violates due process.  See Abubaka v. Bondi, No. C25-1889 RSL, 2025 WL 3204369, at *8 (W.D. Wash. Nov. 17, 2025) ("the Government's practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under Wong Wing, 163 U.S. 228 at 236-38 (1896), and Zadvydas, 533 U.S. 678 at 693-94 (2001).").

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.   Respondent must IMMEDIATELY RELEASE petitioner Ali Abu Salim, A-070-085-253, from custody under the same conditions of release to which he was subject prior to his November 25, 2025 detention.  At the time of release, respondents must return all of petitioner's documents and possessions.

3.   Within three days of the date of this order, respondents shall file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his November 25, 2025 detention.

4.   Respondents be PERMANENTLY ENJOINED AND RESTRAINED from seeking to revoke petitioner's supervision unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i), any other applicable statutes and regulations, and the requirements of due process.

5.   Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing petitioner to a third country unless respondents adhere to the following procedures:

    a.   Provide petitioner a meaningful opportunity and a minimum of ten days to raise a fear-based claim for protection prior to removal;

    b.   If petitioner demonstrates reasonable fear of removal to the third country, respondents must move to reopen petitioner's removal proceedings;

    c.   If petitioner is not found to have demonstrated a reasonable fear of removal to the

10

third country, respondents must provide a meaningful opportunity and a minimum of fifteen days for petitioner to seek reopening of his immigration proceedings.

6. Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing petitioner to any country where he is likely to face imprisonment upon arrival.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **three** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 15, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11